# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| ROGER L. BLANKENSHIP, ) | |
| ) | |
| Plaintiff, ) | Case No.1:05CV00012 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| JO ANNE B. BARNHART, ) | By: James P. Jones |
| COMMISSIONER OF ) | Chief United States District Judge |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

*Roger W. Rutherford, Wolfe, Williams & Rutherford, Norton, Virginia, for Plaintiff; Julie C. Dudley, First Assistant United States Attorney, Roanoke, Virginia, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

## *I. Background.*

Roger L. Blankenship filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's claim for a period of disability and disability insurance benefits ("DIB") under title II of the Social Security Act, 42 U.S.C.A. §§ 401-433 (West 2003 & Supp. 2006) ("Act"). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

My review under the Act is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, this court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Id.*

Blankenship applied for benefits on October 10, 2002, alleging disability since August 10, 2002, and received a hearing before an administrative law judge ("ALJ") on February 10, 2004. By decision dated June 21, 2004, the ALJ found that the plaintiff was not disabled within the meaning of the Act. The Social Security Administration's Appeals Council denied review, and the ALJ's opinion constitutes the final decision of the Commissioner.

The parties have filed cross motions for summary judgement and have briefed the issues. The case is now ripe for decision.

## II. Facts.

The plaintiff was fifty-four years old at the time of the ALJ hearing, an individual closely approaching advanced age under the regulations. He has a high

school education and past work experience as a heavy equipment operator, underground coal miner, and strip mine supervisor. The plaintiff alleges disability due to back impairment, heart impairment, and hypertension.

Dr. Ronald Hall treated the plaintiff from at least July 23, 2001 through September 25, 2002, although the records indicate visits prior to July 2001. Dr. Hall monitored the plaintiff for possible recurrence of malignant melanoma on the back and calf. (R. at 115-22.)

Dr. William Lester treated the plaintiff from at least August 1, 2001 through October 8, 2002. The records indicate treatment prior to August 2001. Treatment was rendered for low back pain, earache, pain radiating toward the foot, and atrial fibrillation. (R. at 155-175.) On August 1, 2001, Dr. Lester opined that, given the plaintiff's chronic back pain and its failure to improve over time, a MRI scan was needed. On August 2, 2001, lumbar spine X rays revealed mild degenerative changes and mild narrowing of L4-L5 disc space. (R. at 173.) A MRI of the lumbar spine, also dated August 2, 2001, showed small central disc protrusions with mild impingement of the thecal sac at the L4-L5 and L5-S1, as well as mild degenerative changes of the facet joints mainly on the left side. (R. at 171-72.) In November 2001, the plaintiff had an exacerbation of his low back pain, but he had no

neurological symptoms. Dr. Lester prescribed Lortab for the lower back pain. (R. at 164.)

In May 2002, the plaintiff reported to Dr. Lester that he had been doing somewhat better overall. (R. at 161.) He had occasional episodes where his lower back bothered him and where he had pain radiating toward his foot. (*Id.*) Dr. Lester noted the Lortab provided significant relief but that due to flooding and an increased amount of shoveling around the plaintiff's house, he was taking more Lortab. (*Id.*)

In August 2002, the plaintiff reported that his back pain had become more severe. (R. at 158.) Dr. Lester noted that the plaintiff's low back pain may be prohibiting him from completing his duties at work. Dr. Lester did not feel it was safe for the plaintiff or his co-workers for him to operate machinery. (*Id.*)

On September 18, 2002, Dr. Lester further stated that the plaintiff would not be able to work any time in the near future. The plaintiff continued to receive treatment from Dr. Lester for low back pain, left ear pain, palpitations with shortness of breath, and artrial fibrillation. ( R. at 156.)

In October 2002, the plaintiff received treatment from Dr. Ann Jackson, a cardiologist. Dr. Jackson reported that the plaintiff had no neurological symptoms whatsoever and was tolerating his medications without side effects. The plaintiff reported to Dr. Jackson that he was walking every day and had lost three pounds. He

stated to Dr. Jackson that now that he was not working as much, he had more time to try and be healthy. (R. at 134.)

In January 2003, the plaintiff reported low back pain to Dr. Lester, but he failed to note any pain radiating down his leg or numbness in that area. In February 2003, although the plaintiff developed pain with standing, the straight leg raising test was found to be negative. (R. 191-92.)

On a return visit in February 2003, Dr. Jackson opined that since she had last seen the plaintiff, he was doing well and was without tachypalpitations, othopnea, paroxysmal nocturnal dyspnea, or pedal edema. (R. at 191.)

In December 2003, Dr. Lester indicated that due to the plaintiff's low back pain, he could occasionally lift and carry up to twenty pounds; was limited to sitting, standing, and walking; could not squat, crawl, or climb; and needed to avoid exposure to marked changes in temperature and humidity. (R. at 205.)

In January 2004, the plaintiff underwent a psychological evaluation by Sharon J. Hughson, Ph.D. Dr. Hughson found that he only displayed pain behaviors when he attempted to bend. (R. at 208.) However, Dr. Hughson diagnosed the plaintiff with a pain disorder associated with both psychological factors and a general medical condition. (*Id.*)

-5-

Case 1:05-cv-00012-JPJ-PMS   Document 17   Filed 09/22/06   Page 5 of 15   Pageid#: 67

H.C. Alexander, III, M.D., a medical expert, was present at the hearing and testified. After reviewing all of the medical evidence regarding the plaintiff's heart condition, Dr. Alexander was of the opinion that the plaintiff could perform light activity. (R. at 306.) Although the plaintiff had a disc herniation, he was found to have no stenosis or impingement on any neural foramina. (*Id.*) Dr. Alexander testified that the plaintiff could still perform light work with is back impairment. (R. at 307.) He also specifically stated that the plaintiff should be able to sit, stand, and walk for six hours in a work day and stand or walk for two hours at a time.

Dr. Marvin Gardner, a psychological medical expert, was also present at the hearing before the ALJ and testified. He opined that Dr. Hughson's diagnosis of pain disorder was based primarily upon the plaintiff's self-reported subjective complaints. (R. at 312.)

James Williams, a vocational expert, was also present and testified before the ALJ. Mr. Williams testified that an individual with the plaintiff's residual functional capacity could perform the jobs of road roller operator, shield runner, ditch operator, utility tractor operator, mucking machine operator, and form grader operator. (R. at 319.)

The ALJ found the plaintiff's allegations partially credible and determined he would be unable to perform his past relevant work. (R. at 21.) However, the ALJ

determined that the plaintiff is capable of performing a significant range of light work as defined in 20 C.F.R. § 404.1567 (2006). The ALJ also found that the Social Security Administration had met its burden of showing that there are other jobs existing in significant numbers in the national economy that the plaintiff could perform, consistent with his residual functional capacity, age, education, and work experiences.

The plaintiff filed this action contending that (1) the ALJ failed to give proper weight to the opinion of his treating physician; and (2) the ALJ failed to give proper weight to the opinion of the examining psychologist.

### III. Analysis.

My review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision, and whether the correct legal standard has been applied. 42 U.S.C.A. § 405(g). *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). If substantial evidence exists, the final decision of the Commissioner must be affirmed. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws*, 368 F.2d at 642.

It is the role of the ALJ to resolve evidentiary conflicts, including inconsistences, in the evidence. It is not the role of the court to substitute its judgment for that of the Commissioner, as long as substantial evidence provides a basis for the Commissioner's decisions. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Commissioner applies a five-step sequential evaluation process when assessing an applicant's disability claim. The Commissioner considers, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520 (2006). If it is determined at any point in the five-step analysis that the claimant is not disabled, then the inquiry immediately ceases. *See Id.* § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 141-42 (1987).

In order for a disability claim to prevail, the plaintiff has the initial burden of showing he is unable to return to his past relevant work because of his particular impairments. However, simply showing an inability to perform past relevant work is not enough to prevail. The burden shifts to the Commissioner to establish that the plaintiff retains the functional ability, considering his age, education, work

experience and impairments to perform alternative work that exists in significant numbers in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A).

In this case, the ALJ determined that the plaintiff would be unable to perform his past relevant work. (R. at 21.) Therefore, the issue is whether there was substantial evidence to support the Commissioner's finding that the plaintiff retains the capacity for work that exists in significant numbers in the national economy.

*A*

The plaintiff argues the Commissioner failed to give the proper weight to the opinion of his treating physician, Dr. Lester. Although the opinion of a treating physician may be entitled to some deference, it is not necessarily controlling under the most recently promulgated regulations. The plaintiff's reliance on the "treating physician rule" is misplaced.[1] The "treating physician rule" is not the controlling standard for evaluating a medical opinion in this case.

---

[1] The "treating physician rule" was superseded in 1991 by the agency's promulgation of 20 C.F.R. § 404.1527. *See Shrewsbury v. Chater*, No. 94-2235, 1995 U.S. App. LEXIS 27968 at *7 n.5 (4th Cir. Oct. 6, 1995) (unpublished) ("As regulations supersede contrary precedent . . . the 'treating physician rule' . . . [is no longer] controlling"); *Stroup v. Apfel*, No. 96-1722, 2000 U.S. App. LEXIS 2750 at *13-14 (4th Cir. Feb. 24, 2000) (unpublished) ("The 1991 regulations supersede the 'treating physician rule' from our prior case law. . . . Section 404.1527 therefore is the controlling standard for evaluating the medical opinions in the instant case."). *See also Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (holding that the 1991 regulations are binding on the courts and supersede the circuit's "treating physician rule"); *Winford v. Chater*, 917 F. Supp. 398, 400 (E.D. Va. 1996) ("This regulation [§ 404.1527] supersedes the Fourth Circuit's 'treating physician rule,' which the Magistrate Judge applied in this case.").

Under 20 C.F.R. § 404.1527(2006), a treating physician's opinion is entitled to more weight than the opinion of a non-treating physician, but it is entitled to controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *See Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). ([I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.")

The ALJ is required to consider a number of factors when determining the weight to give to the treating physician's opinion, such as the scope and frequency of any examining relationship; the length, nature and extent of the treatment; the objective evidence supporting the opinion; and the opinion's consistency with the medical record as a whole. *See* 20 C.F.R. § § 404.1527(e)(2)-(e)(3), 416.927(e)(2)-(e)(3) (2006).

Although Dr. Lester's opinion may be entitled to more weight than those of the non-treating physicians who testified before the ALJ, Dr. Lester's opinion should be credited only to the extent of its "intrinsic value, persuasiveness, and internal consistency" and its consistency with other evidence. 56 Fed. Reg. 36934-35 (Aug. 1, 1991). In particular, the ALJ determined the record failed to substantiate the limitations Dr. Lester had placed on the plaintiff. Although the plaintiff asserts

otherwise, a contrary opinion by an examining physician was not required in order for the ALJ to reach the conclusion that the plaintiff is not disabled.

The medical evidence before the ALJ and the opinion of the experts who testified at the hearing provided substantial evidence to support a finding that the plaintiff was not disabled due to his back and heart impairments. A MRI done in August 2001 revealed a small disc protrusion at the L4-L5 level, with degenerative changes. During Dr. Lester's course of treatment, he noted that the claimant had a good range of motion. In early 2003, good lower extremity strength was also noted. A straight leg raising test was also found to be negative. In comparing the medical findings of Dr. Lester to the limitations he had placed on the plaintiff, the ALJ determined such limitations were not justified by the objective evidence. Given his evaluation of the records, the ALJ was entitled to give less weight to the opinions of Dr. Lester.

Furthermore, Dr. Alexander's evaluation of the plaintiff's condition and limitations, provided substantial evidence to support the ALJ's decision. Dr. Alexander concluded after reviewing the plaintiff's medical records that the medical evidence established that the plaintiff had "severe" impairments, but not severe enough to be classified as disabled under the applicable regulations. In regard to the plaintiff's heart condition, Dr. Alexander determined from the objective evidence in

the plaintiff's medical records that he could do light activity and had no limitation in walking, standing, or sitting. He also stated that the plaintiff's heart condition was not causing the weakness he was experiencing. In regard to the plaintiff's back impairment, he determined from the relevant medical evidence that the plaintiff could be limited to light work, lifting a maximum of twenty pounds, and would be able to sit for six to eight hours during a work day. Although the plaintiff had a disc herniation, he had no stenosis or impingement or any neural foramina.

The objective medical evidence as well as the testimony of Dr. Alexander provided substantial evidence to support a finding by the ALJ that the plaintiff was not disabled.

B

The plaintiff also contends that the ALJ failed to properly credit the opinion of Dr. Hughson, the examining psychologist. However, substantial evidence exists to support the ALJ's decision regarding plaintiff's psychological impairment.

The ALJ discounted Dr. Hughson's conclusions regarding the plaintiff's mental status because those conclusions were largely based on the plaintiff's subjective complaints and were not consistent with the record of examination. Dr. Gardner also indicated the mental status evaluation included no objective testing measures.

-12-

Dr. Gardner testified that the plaintiff's pain originates from his back and was not somatoform in nature. Furthermore, the ALJ noted that the plaintiff is not taking any medication for psychological problems nor is he being treated for any. Considering the record of examination produced by Dr. Hughson and Dr. Gardner's testimony, there was substantial evidence to conclude any psychological impairment is not severe and does not cause significant work-related problems.

*C*

The plaintiff next assigns error to the ALJ's failure to recontact Drs. Lester and Hughson after evaluating their opinions in light of the reports and medical records they provided. An ALJ must recontact a physician when the evidence received from that physician is inadequate to determine whether a claimant is disabled. 20 C.F.R. § 404.1512(e) (2006). The regulations state the additional contact should occur where the report from the treating physician contains a conflict or ambiguity, lacks necessary information, or does not appear to be based on medically acceptable clinical and diagnostic techniques. *Id.* § 404.1512(e)(1).

The plaintiff contends that because the ALJ believed the medical records did not substantiate the limits Dr. Lester placed on him, the ALJ was required to recontact Dr. Lester in order to obtain additional information to make such a substantiation.

-13-

There is no indication that the evidence received from Dr. Lester was inadequate to determine whether the plaintiff was disabled. Additionally, no report submitted by Dr. Lester contained a conflict or ambiguity nor did any report lack necessary information. There is also no indication that Dr. Lester's reports were not based on medically acceptable clinical and diagnostic techniques. The ALJ merely found Dr. Lester's conclusions unconvincing in light of the evidence he reviewed.

The fact that the ALJ gave little weight to the opinions of Dr. Lester did not mean he had a duty to seek additional information in an attempt to find such opinions credible.

The plaintiff similarly contends that the ALJ was required to recontact Dr. Hughson, the examining psychologist, after affording her opinion little weight. However, there is no indication that the information received from Dr. Hughson was inadequate to make a determination of disability. As stated above, an ALJ need only recontact a physician when the evidence received from that physician is inadequate to determine whether a claimant is disabled. *Id.* § 404.1512(e). The ALJ merely disagreed with the conclusions reached by Dr. Hughson after reviewing the record of examination. In fact, the ALJ based most of his findings regarding the plaintiff's psychological impairment on the information presented in Dr. Hughson's record of

-14-

examination. There was adequate information upon which to base a decision on the plaintiff's disability.

## IV. Conclusion.

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied and the defendant's Motion for Summary Judgment will be granted.

An appropriate final judgment will be entered.

DATED: September 22, 2006

/s/ JAMES P. JONES
Chief United States District Judge